MILLER, Judge.
James Moses seeks $1,727.84 as property damages sustained by his unloaded 15-yard gravel trailer and tractor in a sideswipe type accident which occurred on a 20-foot wide bridge at about 4:00 p. m. on August 14, 1967. Defendant Charles L. Mundy reconvened for $250.00 as property damages sustained by his John Deere Model 894 hay-rake, which he was towing behind his one-half ton pickup truck.
The trial judge handed down a well reasoned opinion holding for plaintiff on the basis that the sole proximate cause of the accident was Mundy’s negligence in allowing the hayrake to cross over into the oncoming gravel truck’s lane of traffic. Mr. Mundy seeks to reverse this decision contending that the evidence requires a contrary holding, and that Mr. Mundy is entitled to recover his damages.
We fail to find manifest error on the part of the trial judge in accepting one line of testimony and rejecting the other, particularly when the physical evidence as shown from photographs in evidence support the decision of the trial judge.
The accident occurred in Rapides Parish on Louisiana Highway 1207 about one-quarter mile from the Buckeye School. The gravel truck was heading east and the pickup truck was heading west. Both vehicles approached the 30-foot long bridge at approximately 45 miles per hour. The blacktop road leading to the bridge is essentially straight, level and was dry. The paved portion of the road was 20 feet 4 inches wide on both approaches to the bridge with grass shoulders of a width of approximately 8 feet on both sides. The travel portion of the bridge had a width of 19 feet 4 inches, with the width of the bridge rails 19 feet *695 W/2 inches, both measurements made at the center of the bridge. The rails on both sides of this bridge were galvanized, crimped metal running the entire length of the bridge and were approximately 10 inches tall with the bottom of this rail approximately 14 inches above the roadway. These rails were supported by either four or five timbers which appear to be 6 x 6 inch size. On each side of the bridge there were additional metal strips approximately 6 feet long set at about a 35 degree angle to direct attention to the fact that the road shoulders ended and to funnel traffic into the 30 foot long bridge.
All parties agreed that the impact of the left side of the hayrake and the left front bumper and fender of the gravel truck occurred at the center of the bridge measured east and west. But the parties differed as to the lane of traffic in which the impact occurred, both having testified that the impart occurred in their own proper lane of travel.
Since the length of the pickup truck was approximately 15 feet 6 inches and the length of the hayrake was 9 feet 10 inches, it is clear that both parties were correct in placing the pickup truck as coming off the bridge at the time of impact. At this time the tractor portion of the gravel truck rig was on the bridge and the trailer was almost on the bridge. The parties stipulated that the hayrake was 7 feet 9 inches wide, but Mr. Mundy vacillated on whether or not it extended beyond the width of his pickup truck.
Plaintiff explained how the hayrake suddenly appeared in the wrong lane by pointing to some green paint and fresh scratches on the easternmost edge of the northern rail of the bridge indicating that the hay-rake struck the railing and was knocked into the wrong lane. The existence of paint and scratches on that portion of the bridge rail was admitted, but it was vigorously denied by defendant that the paint matched his hayrake, and specifically that the hay-rake struck the bridge.
In any event, the driver of the gravel truck did not see the hayrake until it suddenly appeared in his lane of traffic. Because he had approached the bridge with his foot riding the brake pedal, the driver was able to and did instantly apply his brakes and swerved to the right. There was slightly more than 3 feet to spare when the two vehicles met. The drive wheels of the gravel truck were 15 feet behind the front bumper and were dual wheels. The rear dual wheels of the trailer were approximately 20 feet behind the drive wheels. The right dual drive wheels struck the railing on the gravel truck’s right side and broke all supports, leaving the railing in one piece in the ditch. This impact with the railing tore the drive wheels loose from the gravel truck. It is defendant’s position that this impact caused the gravel truck to cross into the opposing lane and strike his hayrake.
But the photographs in evidence show skid marks of approximately 25 feet leading to the point where the back of the trailer stopped and to the position where the bridge railing was knocked down. These skid marks were apparently laid down by the rear dual wheels of the trailer. These and other skid marks on the bridge indicate that the gravel truck never did get in the opposing lane of traffic. Instead the skid marks west of the bridge start with the outermost dual tires on the edge of the blacktop and show them angling slightly to the right where the dual drive wheels of the gravel truck struck the bridge rails. Furthermore, the tractor portion of the gravel truck came to rest at the west end of the bridge and the trailer portion was connected and remained on the bridge. The fact that traffic was able to cross the bridge after thé accident and before removal of the gravel truck and trailer indicates that the eastbound lane was relatively clear.
Notwithstanding the varying lines of testimony, there is ample evidence to support the trial judge’s decision that the sole proximate cause of this accident was the negligence of Mr. Mundy in allowing his *696 hayrake to suddenly enter the wrong lane of traffic on this 19 foot 4 inch wide bridge at a time when there was no evasive action that could be taken by the gravel truck which was at that time committed to crossing the bridge.
For these reasons the judgment appealed from is affirmed at appellant’s cost.
Affirmed.